UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| FELICIA ANN SPOLJORIC, | ) |
|---|---|
| *Plaintiff*, | ) |
| | ) Case No: 3:20-cv-545 |
| v. | ) |
| | ) Judge Christopher H. Steger |
| KILOLO KIJAKAZI, | ) |
| Acting Commissioner of Social Security Administration, | ) |
| *Defendant*. | ) |

## **MEMORANDUM OPINION**

### I. Introduction

Plaintiff Felicia Ann Spoljoric seeks judicial review under § 205(g) of the Social Security Act ("Act"), 42 U.S.C. § 405(g), from her denial of disability insurance benefits by the Commissioner of the Social Security Administration ("Commissioner") under Title II of the Act, 42 U.S.C. §§ 401-34. [*See* Doc. 1]. The parties consented to entry of final judgment by the undersigned United States Magistrate Judge, under 28 U.S.C. § 636(c), with an appeal to the Court of Appeals for the Sixth Circuit. [Doc. 17].

For reasons that follow, Plaintiff's Motion for Judgment on the Administrative Record [Doc. 22] will be **DENIED**, the Commissioner's Motion for Summary Judgment [Doc. 26] will be **GRANTED**, and judgment will be entered **AFFIRMING** the Commissioner's decision.

### II. Procedural History

On November 30, 2018, Plaintiff applied for disability insurance benefits. (Tr. 15). Plaintiff's claims were denied initially as well as on reconsideration. *Id.* As a result, Plaintiff requested a hearing before an administrative law judge. *Id.*

At a telephonic hearing (due to the COVID-19 pandemic) on June 6, 2019, in which Plaintiff and her attorney both participated, Administrative Law Judge Mary Ellis Richardson (the "ALJ") heard testimony from Plaintiff and a vocational expert ("VE"). (Tr. 15, 25). The ALJ then rendered her decision, finding that Plaintiff was not under a "disability" as defined by the Act. (Tr. 25).

Following the ALJ's decision, Plaintiff requested that the Appeals Council review the denial; but, that request was denied. (Tr. 1). Exhausting her administrative remedies, Plaintiff then filed her Complaint [Doc. 1] on December 23, 2020, seeking judicial review of the Commissioner's final decision under § 405(g). The parties filed competing dispositive motions, and this matter is ripe for adjudication.

### III. Findings by the ALJ

The ALJ made the following findings concerning Plaintiff's application for benefits:

1. Plaintiff last met the insured status requirements of the Social Security Act on December 31, 2019.

2. Plaintiff did not engage in substantial gainful activity during the period from her amended alleged onset date of March 31, 2018, through her date last insured of December 31, 2019 (20 C.F.R. § 404.1571 *et seq.*).

3. Through the date last insured, Plaintiff had the following severe impairments: major depressive disorder, generalized anxiety disorder, and posttraumatic stress disorder (20 C.F.R. § 404.1520(c)).

4. Through the date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526).

5. After careful consideration of the entire record, through the date last insured, Plaintiff had the residual functional capacity to perform work at all exertional levels but with the following non-exertional limitations: she is limited to simple tasks where interaction with coworkers and supervisors is occasional and there is no interaction with the general public and where changes in the workplace are occasional.

6. Through the date last insured, Plaintiff was unable to perform any past relevant work (20 C.F.R. § 404.1565).

7. Plaintiff was born on December 1, 1971, and was 48 years old, which is defined as a younger individual age 18-49, on the date last insured (20 C.F.R. 404.1563).

8. Plaintiff has at least a high school education and is able to communicate in English (20 C.F.R. 1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not Plaintiff has transferable job skills (*See* SSR 82-41 and 20 C.F.R. Pt. 404, Subpt. P, App. 2).

10. Through the date last insured, considering Plaintiff's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed (20 C.F.R. §§ 404.1569 and 404.1569(a)).

(Tr. at 12-16).

IV.  **Standard of Review**

This case involves an application for disability insurance benefits ("DIB"). An individual qualifies for DIB if she: (1) is insured for DIB; (2) has not reached the age of retirement; (3) has filed an application for DIB; and (4) is disabled. 42 U.S.C. § 423(a)(1).

The determination of disability is an administrative decision. To establish a disability, a plaintiff must show that she is unable to engage in any substantial gainful activity due to the existence of a medically determinable physical or mental impairment that can be expected to result

in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A); *Abbot v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner employs a five-step sequential evaluation to determine whether an adult claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. The following five issues are addressed in order: (1) if a claimant is engaging in substantial gainful activity, she is not disabled; (2) if a claimant does not have a severe impairment, she is not disabled; (3) if the claimant's impairment meets or equals a listed impairment, she is disabled; (4) if the claimant is capable of returning to work she has done in the past, she is not disabled; (5) if the claimant can do other work that exists in significant numbers in the regional or the national economy, she is not disabled. *Id.* If, at one step, an ALJ makes a dispositive finding, the inquiry ends without proceeding to the next. 20 C.F.R. §§ 404.1520; 416.920; *Skinner v. Sec'y of Health & Human Servs.*, 902 F.2d 447, 449-50 (6th Cir. 1990). Once, however, the claimant makes a *prima facie* case that she cannot return to her former occupation, then the burden shifts to the Commissioner to show that there is work in the national economy that the claimant can perform considering her age, education, and work experience. *Richardson v. Sec'y of Health and Human Servs.*, 735 F.2d 962, 964 (6th Cir. 1984); *Noe v. Weinberger*, 512 F.2d 588, 595 (6th Cir. 1975).

The standard of judicial review is whether substantial evidence supports the Commissioner's findings and whether the Commissioner made any legal errors in the process of reaching the decision. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (adopting and defining substantial evidence standard in the context of Social Security cases); *Landsaw v. Sec'y of Health and Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Even if there is contrary evidence, the Commissioner's

findings must be affirmed if evidence exists to support the Commissioner's findings. *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). Courts may not reweigh the evidence and substitute their judgment for that of the Commissioner because substantial evidence exists to support a different conclusion. The substantial evidence standard allows considerable latitude to administrative decision-makers. It presupposes a "zone of choice" within which decision-makers can go either way without court interference. *Felisky v. Bowen*, 35 F.3d 1027 (6th Cir. 1994) (citing *Mullen v. Bowen*, 800 F.2d 535, 548 (6th Cir. 1986)); *Crisp v. Sec'y, Health and Human Servs.*, 790 F.2d 450 n.4 (6th Cir. 1986).

Courts may consider any evidence in the record, regardless of whether the ALJ cited to it. *See Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). But courts may not consider evidence that was not before the ALJ. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Courts are also not obligated to scour the record for errors not identified by the claimant. *Howington v. Astrue*, No. 2:08-cv-189, 2009 WL 2579620, at *6 (E.D. Tenn. August 18, 2009) (stating that assignments of error not made by claimant were waived). Further, issues "adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *Kennedy v. Comm'r of Soc. Sec.*, 87 F. App'x 464, 466 (6th Cir. 2003) (quoting *United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996)).

V.     **Analysis**

Plaintiff contends that substantial evidence does not support the ALJ's residual functional capacity ("RFC") determination because the ALJ: (1) failed to properly evaluate the opinion evidence of mental health provider Amy Cofer, M.A., L.P.C.; (2) mischaracterized evidence; and (3) failed to create a logical bridge between the evidence and the resulting RFC. The Court will address these issues in turn.

### A. Opinion Evidence from Ms. Cofer

Plaintiff claims the ALJ erred by failing to discuss the supportability and consistency of the opinion of mental health provider Amy Cofer, M.A., L.P.C. To clarify, Ms. Cofer provided opinions on two occasions—June 21, 2019, and July 3, 2019. Since the ALJ addressed each separately, the Court will do the same.

Plaintiff applied for Title II benefits on November 30, 2018. Thus, her claim is governed by the regulations applicable to claims filed on or after March 27, 2017. *See* 20 C.F.R. §§ 404.1513, 404.1520b, and 404.1520c. Under the applicable regulations, a medical opinion is a statement from a medical source about what a claimant can still do despite the impairment(s) and whether the claimant has one or more impairment-related limitations or restrictions. 20 C.F.R. § 404.1513(a)(2). In determining the persuasiveness of the medical opinions of record, an ALJ must evaluate the supportability and consistency of a medical opinion; these are the two most important factors for assessing the persuasiveness of a medical opinion. 20 C.F.R. § 404.1520c(b)(2).

For supportability, the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion, the more persuasive the medical opinions will be. *Id.* at (c)(1). For consistency, the more consistent a medical opinion is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion will be. *Id.* at (c)(2).

Regarding supportability, the ALJ did not use the word "supportability" in her analysis of either of Ms. Cofer's opinions. *See* (Tr. 21-22). However, the substance of the ALJ's analysis is more important than the labeling. For instance, when discussing Ms. Cofer's June 19 opinion, the ALJ stated that the opinion contained "vague statements." (Tr. 22). This goes directly to the heart

of the relevance of "supporting explanations." The vague statements by Ms. Cofer mean that her "supporting explanations" are less relevant because they lack specifics and/or are not particularly on point. When the ALJ gave a specific example of a vague statement from the June 19 opinion, she termed it "neither persuasive nor inherently valuable." (Tr. 23). In other words, it did not contain strong relevant support. Additionally, in discussing Ms. Cofer's July 3 opinion, the ALJ again highlighted a specific example of vagueness. *Id.* This time, however, she noted that it was unpersuasive because the opinion was "largely based on [Plaintiff's] self-reports rather than objective medical findings." (Tr. 23). This directly addresses supportability and is a legally sound position. *See Keeler v. Comm'r of Soc. Sec.*, 511 F. App'x 472, 473 (6th Cir. 2013) (recognizing that even under the deferential treating physician rule applicable to claims filed before March 27, 2017, the ALJ was not required to give controlling weight to an opinion where "it appeared to be based primarily on Keeler's subjective complaints, and it was contradicted by other evidence in the record . . . ."); *Kepke v. Comm'r of Soc. Sec.*, 634 F. App'x 625, 629 (6th Cir. 2016) ("Regardless of any inherent subjectivity in the field of psychiatry, a doctor cannot simply report what his patient says and repackage it as an opinion.").

Regarding consistency, the ALJ did not use the word "consistency" in her analysis of either of Ms. Cofer's opinions. *See* (Tr. 21-22). However, as with supportability, the substance of the ALJ's analysis is more important than the labeling. In discussing Ms. Cofer's June 19 opinion, the ALJ wrote:

> [Ms. Cofer] assessed mostly "poor" limitations that are inconsistent with and not supported by the medical evidence, including the overall treatment history and mental status findings, and reported activities of daily living. For example, [Ms. Cofer] assessed several "poor" limitations regarding social interaction. However, [Plaintiff] has reported that she can shop in stores, and she spends time with her husband and mother. Additionally, medical records do not show difficulty getting along with medical providers or staff. As well, in June 2018, [Plaintiff] reported that she went fishing with her husband.

(Tr. 23).

First, the ALJ compares Ms. Cofer's June 19 opinion with other medical and nonmedical sources in the record as required by 20 C.F.R. § 404.1520c(c)(2). Then she uses multiple specific examples to illustrate her broader conclusion. Similarly, in her analysis of Ms. Cofer's July 3 opinion, the ALJ compared Ms. Cofer's opinion to what was in the record using three specific examples. This sort of comparison with other sources in the record to analyze persuasiveness is precisely what is required by the regulations.

Certainly, the ALJ could have made her supportability and consistency analysis clearer by delineating each section. However, her analysis of Ms. Cofer's opinions included the required discussion of both supportability and consistency. Therefore, Plaintiff's claim of error by the ALJ in this regard is unpersuasive.

      B.      **Mischaracterization of Evidence**

Plaintiff claims that the ALJ mischaracterized evidence in three areas: (1) regarding Plaintiff's ability to shop in stores; (2) regarding Plaintiff's socializing with her husband and mother; and (3) regarding Plaintiff's use of Facebook. The Court will address each in turn.

Regarding shopping, the ALJ found that Plaintiff "has reported she can shop in stores." (Tr. 23). Plaintiff claims this is a mischaracterization because the ALJ "based this on a function report completed by Plaintiff. However, that report actually states that Plaintiff only goes to shop one time a month and goes at 1:00 or 2:00 a.m. when she is unable to sleep and no one is there." [Doc. 23 at 9] (citations omitted). Plaintiff is incorrect about "that report." The ALJ cited to the function report from December 16, 2018, found at Transcript pages 231-40. (Tr. 23). Plaintiff cited to the function report from June 23, 2019 found at Transcript pages 255-62. [Doc. 23 at 9]. Therefore, Plaintiff mischaracterizes what the ALJ cited.

This problem notwithstanding, in the December 16, 2018 function report actually cited by the ALJ, Plaintiff reported that she shopped for food items for about an hour, twice a month, very late at night. (Tr. 236). She also reported going to junk stores once a week with her mother. (Tr. 237). The ALJ did not mischaracterize anything about Plaintiff's shopping, such as stating that Plaintiff shopped frequently. The ALJ merely stated that Plaintiff "has reported she can shop in stores," which is consistent with the portion of the record the ALJ cited for that proposition.

Regarding Plaintiff's next claim, the ALJ stated that Plaintiff "spends time with her husband and mother." (Tr. 23). Plaintiff repeats her earlier mistake by claiming the ALJ cited one function report, when she actually cited a different one. *Compare* (Tr. 23) *with* [Doc. 23 at 9]. Further, both function reports and Plaintiff's testimony confirm that Plaintiff spends time with her husband and mother. Thus, the ALJ's characterization in this regard is entirely accurate.

Regarding Plaintiff's use of Facebook, the ALJ stated that Plaintiff "accesses Facebook." Plaintiff claims this is a mischaracterization because, at the hearing, "Plaintiff testified she only gets on Facebook to connect with family and had not been on Facebook in nearly three weeks." [Doc. 23 at 9]. This testimony is not inconsistent with the ALJ's statement that Plaintiff "accesses Facebook."

Admittedly, the issue of mischaracterization can be tricky to parse. When a statement is technically accurate but leaves out context and nuance, where is the line between pragmatic brevity and mischaracterization? Much depends on how the reader interprets the particular phrasing. Here, the Court finds that the overall impression given by the ALJ was not a misleading one. However, Plaintiff's strongest case in this area concerns the ALJ's characterization of Plaintiff's shopping. The ALJ did not include much context and/or nuance

related to Plaintiff's shopping ability. Nevertheless, the ALJ's description was reasonable considering the RFC.

The ALJ's determination of RFC included social interaction restrictions that limited Plaintiff to "simple tasks where interaction with coworkers and supervisors is occasional and there is no interaction with the general public." (Tr. 21). This means Plaintiff would need a relatively minimal ability to interact socially. In context, the ALJ's shopping description is being used to show some minimal amount of social functionality. She is not citing it to show that Plaintiff can handle the social interaction requirements of a normal job. Lending further support to this contextual interpretation is the fact that the ALJ also cited Plaintiff's social time with her husband and mother and her apparent ability to get along with medical providers and staff. (Tr. 23). All told, the relatively minimal abilities listed accurately match up with the minimal abilities required in the RFC.

For instance, the ALJ's RFC requires Plaintiff to be able to interact with coworkers and supervisors occasionally. The ALJ cited three different types of "occasional" social relationships Plaintiff currently navigates: grocery store personnel, medical office personnel, and immediate family.[1] On a spectrum based on frequency of Plaintiff's social interactions with the same individuals, grocery store personnel would be lowest on the spectrum, immediate family would be highest, and medical office personnel would be somewhere in between. Plaintiff's degree of comfort with each type of social relationship seems to correspond with this schema. She is least comfortable at the grocery store,[2] functions at her medical appointments,[3] and is most

---

[1] The ALJ does not need to address a fourth social relationship—the general public—because the RFC requires Plaintiff's job to have "no interaction with the general public." (Tr. 21). This limitation is consistent with and supports Plaintiff's severe impairments and her avoidance of the general public.
[2] Plaintiff grocery shops "very late at night" (Tr. 236), "around 1 or 2 am" when "nobody is there" (Tr. 258).
[3] The ALJ noted that "medical records do not show difficulty getting along with medical providers or staff." (Tr. 23). Additionally, Plaintiff did not report any difficulty in this regard anywhere in the record.

comfortable with her immediate family.[4] Social interaction with coworkers and supervisors would initially be more akin to that with medical office personnel, where a basic relationship is established, and familiarity then grows. However, over time the relationship with coworkers and supervisors on the spectrum would move to somewhere *between* that of medical office personnel and immediate family because of the interaction frequency. It is reasonable to think the ALJ is showing that, based on Plaintiff's current social interaction abilities, she would be able to function initially and then grow to an increased comfort level over time. Thus, the ALJ's decision to use a truncated description of Plaintiff's shopping abilities is consistent with trying to show a minimal amount of social interaction ability, as opposed to a mischaracterization of evidence.

C.     **Lack of a Logical Bridge**

Plaintiff claims the ALJ "failed to create a logical bridge between the evidence and her resulting RFC." [Doc. 23 at 10]. She specifically claims that the ALJ found a moderate limitation in Plaintiff's ability to concentrate, persist, and maintain pace, but did not show how this was accounted for in the RFC. *Id.* She claims that neither the hypothetical presented to the VE, nor the resulting RFC, addressed this moderate limitation.

"As long as the VE's testimony is in response to an accurate hypothetical, the ALJ may rely on the VE's testimony to find that the claimant is able to perform a significant number of jobs." *Anderson v. Comm'r of Soc. Sec.*, 406 F. App'x 32, 35 (6th Cir. 2010).

Plaintiff relies on *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504 (6th Cir. 2010), for the proposition that a hypothetical where "a plaintiff can perform simple, routine, unskilled work does not constitute a limitation addressing a moderate limitation on concentration, persistence, or pace." [Doc. 23 at 11]. However, "[c]ase law in this Circuit does not support a rule that a

---

[4] Plaintiff reported that her "husband or mother are the ones I associate with, except for my doctor and counselor." (Tr. 259). She said she spent time with her husband "every day" and with her mother "every other day." *Id.*

hypothetical providing for simple, unskilled work is *per se* insufficient to convey moderate limitations in concentration, persistence, and pace." *Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 635 (6th Cir. 2016) (explicitly distinguishing *Ealy*). *See also Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 436-37 (6th Cir. 2014) (explicitly distinguishing *Ealy*); *Stewart v. Comm'r of Soc. Sec.*, 811 F. App'x 349, 355-56 (6th Cir. 2020) (affirming an RFC limitation to "simple, routine, repetitive tasks" when Plaintiff "had no more than moderate difficulties . . . in maintaining concentration, persistence, and pace"); *Reinartz v. Comm'r of Soc. Sec.*, 795 F. App'x 448, 449 (6th Cir. 2020) (affirming that a hypothetical to "comprehend, retain, and execute simple, routine, and repetitive tasks" accounted for a "moderate limitation in concentration, persistence, or maintaining pace").

*Kepke* and *Smith-Johnson* both involved plaintiffs with moderate limitations in concentration, persistence, or maintaining pace. *Kepke*, 636 F. App'x at 635; *Smith-Johnson*, 579 F. App'x at 437. *Kepke's* hypothetical to the VE involved a generic limitation to "simple, repetitive tasks," while *Smith-Johnson's* hypothetical to the VE involved a generic limitation to "simple, routine, and repetitive tasks." *Id.* Kepke and *Smith-Johnson* both distinguished *Ealy* on the basis that one of Ealy's providers gave specific limitations regarding concentrating, persisting, or maintaining pace that were not accounted for by the generic limitation to "simple, repetitive tasks," while no provider opined on any specific limitations for Kepke or Smith-Johnson in this area. *Kepke*, 636 F. App'x at 635; *Smith-Johnson*, 579 F. App'x at 436-37. Ultimately, the Sixth Circuit found in both *Kepke* and *Smith-Johnson* that the generic limitations in the hypotheticals were proper in the specific contexts of those cases.

Here, as in *Kepke* and *Smith-Johnson*, no provider gave any specific limitations for Plaintiff regarding concentration, persistence, or maintaining pace. The ALJ presented the VE

with a hypothetical that limited Plaintiff to "simple tasks where interaction with coworkers and supervisors is occasional and where there is no interaction with the general public and where changes in the workplace are occasional." (Tr. 55). The generic limitation to "simple tasks" is not as protective as the generic limitations found in *Kepke* and *Smith-Johnson*, but it is not the only protection present that addresses concentration, persistence, or maintaining pace. While the limitations regarding interactions with others and changes in the workplace directly address Plaintiff's social impairments, they also limit distractions and provide a better environment for Plaintiff to concentrate, persist, or maintain pace. Within the context of providers only giving generic statements about Plaintiff's limitations in concentrating, persisting, or maintaining pace, and the combination of protections provided by the ALJ, her hypothetical was accurate and proper. Therefore, substantial evidence supports both the corresponding RFC and the ALJ's reliance on the VE's testimony that jobs exist in significant numbers in the national economy which Plaintiff can perform. The ALJ did not fail to build a logical bridge between the evidence and her conclusions in this regard.

D.     **Effect of Plaintiff's Claims**

It is the ALJ's responsibility to render RFC determinations after reviewing all the relevant evidence. *Rudd v. Comm'r of Soc. Sec.*, No. 12-6136, 2013 WL 4767020, at *8 (6th Cir. Sept. 5, 2013); *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. Aug. 18, 2009). Though Plaintiff may disagree with the ALJ's RFC finding, the Court must affirm if substantial evidence supports the ALJ's decision. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389–90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the [ALJ] must stand if the evidence could reasonably support the conclusion reached.").

For the reasons noted above, Plaintiff's specific contentions regarding errors by the ALJ

are unpersuasive. While there is certainly evidence in the record that could support a different conclusion regarding Plaintiff's RFC, the ALJ's decision is supported by substantial evidence.

## VI. Conclusion

Having reviewed the administrative record and the parties' briefs, Plaintiff's Motion for Judgment on the Administrative Record [Doc. 22] will be **DENIED**, the Commissioner's Motion for Summary Judgment [Doc. 26] will be **GRANTED**, and the decision of the ALJ is **AFFIRMED**. Judgment will be entered in favor of the Commissioner.

**SO ORDERED.**

/s/ *Christopher H. Steger*
UNITED STATES MAGISTRATE JUDGE